# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONY MUTSCHLER, | : | Civil No. 3:15-cv-2015 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| SEAN DOWNS, | : | |
| Defendant | : | |

## MEMORANDUM

### I. Background and Procedural History

Plaintiff Tony L. Mutschler ("Mutschler"), an inmate currently confined at the Fayette State Correctional Institution, in LaBelle, Pennsylvania, initiated this civil action pursuant to 42 U.S.C. § 1983, setting forth claims against employees at the State Correctional Institution at Frackville ("SCI-Frackville"). The original complaint was dismissed without prejudice, and Mutschler was afforded the opportunity to file an amended complaint. (Doc. 15). Mutschler thereafter filed a proposed amended complaint (Doc. 22-1) which this Court, by Order dated September 6, 2016 (Doc. 25) directed be docketed as the "Standing Amended Complaint in this action."

The matter is proceeding on that amended complaint against one Defendant, Sean Downs, a correctional officer at Mutschler's former place of confinement, SCI-Frackville. (Doc. 26). In the amended complaint, Mutschler sets forth claims of retaliation and denial of

access to the courts against Defendant Downs. (*Id.*). Specifically, Mutschler asserts that Defendant retaliated against him by issuing a false misconduct and ordered Mutschler's legal property confiscated and later destroyed, because Mutschler filed "statements" against two other correctional officers. (*Id.*). Mutschler also asserts that his right to access the courts was violated when his property was confiscated and destroyed. (*Id.*).

Presently pending before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 71). The motion is ripe for resolution and, for the reasons set forth below, the Court will grant the motion.

## II. Summary Judgment Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### III. Statement of Undisputed Facts[1]

On March 25, 2014, Mutschler's cell was searched and several items were confiscated. (Doc. 73 ¶¶ 3-4; Doc. 73-1, p. 32; Doc. 26, pp. 12, 26). As a result of this cell search and investigation, Mutschler was issued a misconduct on March 26, 2014 for allegedly possessing stolen library books. (Doc. 73, Statement of Material Facts, ¶ 1; Doc. 26, § VI, ¶ 1; Doc. 26, p. 12). Defendant Downs did not issue this misconduct or search Mutschler's cell in connection with this misconduct. (Doc. 73 ¶ 2; Doc. 73-1, Deposition of Mutschler, pp. 23-24).

On April 1, 2014, Defendant issued Mutschler a separate misconduct. (Doc. 73 ¶ 5; Doc. 73-1, p. 121).

Approximately six months prior to both misconducts, Mutschler made complaints

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. *See id.* Unless otherwise noted, the factual background herein derives from Defendant's Rule 56.1 statement of material facts. (Doc. 73). Despite being ordered to file a responsive statement of material facts (Doc. 75 ¶ 3; Doc. 77 ¶ 3), Mutschler failed to file a response to Defendant's statement of material facts. The Court accordingly deems the facts set forth by Defendant to be undisputed. *See* M.D. PA. LOCAL RULE OF COURT 56.1.

4

about two other correctional officers, namely, Officer Covington and Officer Shultz. (Doc. 73 ¶ 6; Doc. 73-1, pp. 51-54). Officer Covington works in the library at SCI-Frackville. (Doc. 73 ¶ 7; Doc. 73-1, p. 52). Officer Shultz works in the RHU at SCI-Frackville. (Doc. 73 ¶ 8; Doc. 73-1, p. 51). Defendant Downs is the Security Captain at SCI-Frackville. (Doc. 73 ¶ 9; Doc. 73-1, p. 53). As a result of Mutschler's complaints, no action was taken against Officer Covington or Officer Shultz. (Doc. 73 ¶ 10; Doc. 73-1, p. 55)

In November 2013, several months before Mutschler's property was seized, the United States Supreme Court denied Mutschler's petition for a writ of certiorari in the case of *Mutschler v. SCI-Albion CHCA Health Care, et al.* (Doc. 73 ¶ 11; Doc. 73-2).

Mutschler's criminal convictions and sentences remain in full force and effect. (Doc. 73 ¶ 12; Doc. 73-3, Docket of CP-49-CR-948-1998; Doc. 73-4, Docket of CP-49-CR-949-1998; Doc. 73-5, Docket of CP-49-CR-950-1998). On April 9, 2013, Mutschler filed a second petition for post conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA") in his criminal case. (Doc. 73 ¶ 13; Doc. 73-6, Docket of 780 MDA 2014). On January 29, 2014, the second PCRA petition was denied. (*Id.*). Mutschler filed an appeal to the Pennsylvania Superior Court. (*Id.*). On February 6, 2015, the Pennsylvania Superior Court denied the second PCRA petition as untimely by thirteen years, and found that the Court lacked jurisdiction to hear Mutschler's claims. (Doc. 73 ¶ 13; Doc. 73-7, *Commonwealth v. Mutschler*, 120 A.3d 372, 780 MDA 2014 (Pa. Super.

2015)).

## IV. Discussion

Defendant seeks an entry of judgment in his favor on the following grounds: (1) Mutschler failed to establish a viable retaliation claim, and (2) Mutschler failed to establish an access to the courts claim. (Doc. 72).

### A. Retaliation Claim

It is well-settled that "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000)). Accordingly, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

To prevail on a First Amendment retaliation claim, a plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" at the hands of a state actor; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225). The filing of a grievance against prison officials constitutes protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir.

2016) (citing *Mitchell*, 318 F.3d at 530). "The test for adverse action . . . is not whether *this* plaintiff would be deterred, but rather whether a person of ordinary firmness would be deterred" from exercising his constitutional rights. *Martin v. Gearhart*, No. 16-3839, 2017 WL 4570705, at *5 (3d Cir. Oct. 13, 2017). A plaintiff can establish the third element of a *prima facie* case of retaliation with evidence of: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Watson*, 834 F.3d at 424. "[T]he timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Id.*

Once an inmate makes a *prima facie* case, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334; *see also Carter v. McGrady*, 292 F.3d 152, 154 (3d Cir. 2002) (retaliation claim fails where prison officials would have disciplined inmate for policy violations notwithstanding his protected activity).

Mutschler claims that Defendant Downs filed a false misconduct against him because he "file[d] statement[s] against many of his officer[s] and [Defendant Downs] did not like this because it put . . . (black marks) on his officers['] files." (Doc. 26, § VI, ¶ 15). Mutschler essentially claims that he was issued two retaliatory misconducts. First,

Mutschler claims that he was issued a false misconduct for allegedly stealing and possessing library books. (*Id.*). In response, Defendant contends that he did not authorize or issue the false misconduct pertaining to the alleged stolen library books. (Doc. 72, pp. 6-9). Second, Mutschler claims that Defendant issued a misconduct against him in retaliation for making complaints against two correctional officers six months prior to the issuance of the misconduct. (Doc. 26, § VI, ¶ 15). In response, Defendant contends that Mutschler fails to demonstrate the necessary causal connection between a protected activity on his part and an adverse action on the Defendant's part. (Doc. 72, pp. 6-9).

"In general, 'most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence' because courts afford prison officials 'great deference' in the context of prison disciplinary proceedings." *Whitehead v. Wetzel*, No. 17-2637, 2017 WL 6492638, *5 (3d Cir. Dec. 19, 2017) (quoting *Watson*, 834 F.3d at 425). When evaluating claims of retaliatory discipline, courts must consider "'the quantum of evidence' of the misconduct to determine whether the prison official's decision to discipline an inmate for his violations of prison policy was within the broad discretion [the Courts] must afford them." *Watson*, 834 F.3d at 425. Prison officials are entitled to summary judgment for disciplining a prisoner, even if their actions were motivated by animus, as long as the prisoner's offenses "were so clear and overt" that there was no genuine issue of material fact that the officials' actions were reasonably related to legitimate penological interests. *Carter*, 292

F.3d at 158-59.

Here, as stated, there are two pertinent misconducts. First, on March 25, 2014, Officers Starling and Jones searched Mutschler's cell and confiscated several items, including 28 library books and 43 RHU annex library books. (Doc. 73-1, pp. 89, 108). On March 26, 2014, Officers Starling and Jones issued misconduct number A816388 to Mutschler for allegedly stealing library books. (*Id.*). The record reflects that Defendant Downs did not issue misconduct number A816388 or search Mutschler's cell during the investigation into that misconduct. (*Id.*). Misconduct number A816388 was ultimately dismissed. (*Id.*). In support of his motion for summary judgment, Defendant has produced the report for misconduct number A816388, the Confiscated Items Receipt, and Mutschler's deposition, that all proffer that Defendant Downs was not involved in the investigation of this misconduct or the confiscation of these items from Mutschler's cell. (Doc. 73-1, pp. 22-25, 75-76, 89, 108). Consequently, Defendant has introduced undisputed evidence that he did not authorize or issue misconduct number A816388 and, therefore, Mutschler could not have suffered an "adverse action" at the hands of Defendant Downs with respect to misconduct number A816388.

Second, Defendant Downs issued a separate misconduct, number A816391, due to a pornographic story found in Mutschler's possession. (Doc. 73-1, p. 125). Mutschler ultimately admitted to writing the story, but claimed that it was autobiographical, and,

9

therefore not subject to punishment. (Doc. 73-1, pp. 123-24). On April 8, 2014, a hearing was held regarding misconduct number A816391, and Mutschler was found guilty of the charges. (Doc. 73-1, p. 122). The hearing examiner found that the confiscated material met the Pennsylvania Crimes Code definition of "Possession of Child Pornography." (*Id.*). The record reflects that Mutschler admitted to writing the story, and after an investigation and hearing, he was found guilty of violating a prison rule and the Pennsylvania Crimes Code. Thus, regardless of Defendant Downs' intent when issuing the misconduct, the evidence of Mutschler's violations of a prison rule and the Pennsylvania Crimes Code was "clear and overt" such that there was no genuine dispute of material fact that Defendant's actions were reasonably related to legitimate penological interests. *Carter*, 292 F.3d at 158-59.

Furthermore, Mutschler fails to establish a causal link between a complaint against two officers, Covington and Schultz, and then being issued a misconduct by a different individual, Defendant Downs. Where the prisoner seeks to establish this causal link based upon the temporal proximity between the protected conduct and the alleged retaliatory act, "the timing of the alleged retaliatory action must be unusually suggestive before a causal link will be inferred." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997); *Rauser*, 241 F.3d at 334; *see also Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (concluding that the temporal proximity, nearly six months, is not unduly

suggestive and does not sufficiently establish any causal link). "The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events." *Royster v. Beard*, 2008 U.S. Dist. LEXIS 56764 (M.D. Pa. 2008) (citing *Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005)).

Mutschler fails to provide any direct evidence to create a genuine issue of material fact that his complaint against other prison staff motivated Defendant Downs to charge him with a misconduct six months later. At his deposition, Mutschler stated that he wrote statements against Officer Shultz and Officer Covington. (Doc. 73-1, pp. 51-52). Mutschler acknowledged that both of these officers work in different departments than Defendant. (*Id.* at pp. 51-52). He acknowledged that Officer Shultz works in the RHU, Officer Covington works in the library, and Defendant Downs is the Security Captain. (*Id.* at pp. 51-53). Additionally, although Mutschler believed that Defendant Downs would have investigated his statements, he admitted that he had "no idea" if Defendant Downs actually investigated the statements he made against Officers Shultz and Covington. (*Id.* at p. 54). Instead, Mutschler simply stated that "I just know that it's his job to oversee it." (*Id.*). Mutschler also acknowledged that nothing ever happened to Officers Shultz and Covington as a result of the statements he made against them. (*Id.* at p. 55).

Based on the foregoing, the Court concludes that Mutschler has failed to put forward

evidence that Defendant Downs issued a retaliatory misconduct. Accordingly, Defendant is entitled to entry of summary judgment in his favor on the retaliation claim.

## B. Access to the Courts Claim

Mutschler also claims that his right to access the courts was violated when his legal property was confiscated and destroyed. To establish a cognizable access to the courts claim, a prisoner must demonstrate that he has suffered an actual injury to his ability to present a nonfrivolous, arguable claim. *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) (noting that the complainant "must describe the underlying arguable claim well enough to show that it is 'more than mere hope'"). The claim must relate to either a direct or collateral challenge to the prisoner's sentence or conditions of confinement. *See Lewis*, 518 U.S. at 355 (finding "[i]mpairment of any other litigating capacity is simply one of the incidental . . . consequences of conviction and incarceration."). And, an "actual injury" does not occur without a showing that a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented. *Lewis*, 518 U.S. at 354-56. Furthermore, a prisoner must demonstrate that no other remedy will potentially compensate for the lost claim. *Monroe*, 536 F.3d at 205.

Mutschler asserts that if his property was not confiscated and destroyed, "his criminal case would have gone back to court [and] he mite [sic] now be a free man[.]" (Doc.

26, § VI, ¶ 11). During the investigation of misconduct number 816388, two correctional officers seized Mutschler's legal books, including the Rules of Criminal Procedure and Black's Law Dictionary, as well as copies from other books, transcripts from his criminal case, and paperwork related to a civil case against SCI-Albion. (Doc. 73-1, pp. 32-36). With respect to his civil case, Mutschler claims that he was waiting for a response from the United States Supreme Court, and he "had to file also another petition to go with it and never could do it because I had all the stuff taken from me." (*Id.* at pp. 36-37). Regarding his criminal case, Mutschler states that he "lost [his] criminal case because [he] didn't have the materials left." (*Id.* at p. 37). The Court finds that Mutschler's access to the courts claim fails for the following reasons.

First, the record reflects that Defendant Downs was not the individual who seized Mutschler's materials. During his deposition, Mutschler acknowledges that Defendant Downs did not sign the first misconduct charging him with possessing stolen library books. (Doc. 73-1, p. 28). Rather, Defendant Downs issued the second misconduct for the pornographic story. (*Id.*). Mutschler further acknowledges that the confiscation of his books occurred during the investigation into his first misconduct. (Doc. 73-1, pp. 23-29). The record reflects that Officers Starling and Jones searched Mutschler's cell when investigating the first misconduct. (Doc. 73-1, pp. 23-24, 28-29). The Confiscated Items Receipt states that the items at issue were taken on March 25, 2014. (Doc. 73-1, p. 89). Mutschler

13

confirms that the Confiscated Items Receipt was "the list of the stuff that they took out of the cell as a result of investigating the library book misconduct[.]" (Doc. 73-1, p. 32). The uncontroverted record reflects that Defendant Downs was not involved in the misconduct related to the stolen library books, and did not confiscate the items that are the subject of Mutschler's access to the courts claim. Furthermore, Mutschler is presently pursuing an access to the courts claim against the officers who actually confiscated his legal materials. See Mutschler v. Tritt, et al., Civil No. 3:14-CV-1611 (M.D. Pa.).

Second, during his deposition, Mutschler referenced a civil case he filed against SCI-Albion. (Doc. 73-1, p. 36). The record reflects that in Mutschler v. SCI-Albion CHCA Health Care, et al., Mutschler filed a petition for writ of certiorari on September 3, 2013. (Doc. 73-2). On November 12, 2013, four months before the alleged seizure of Mutschler's legal materials, the United States Supreme Court denied the petition. (Id.). Therefore, Mutschler could not have been denied access to the courts in November 2013, when the seizure of his materials occurred in March 2014. Thus, the Court finds that any claim of denial of access to the courts in relation to the case of Mutschler v. SCI-Albion CHCA Health Care, et al., fails.

Third, the Court finds that Mutschler fails to demonstrate that he was denied access to the courts regarding his criminal convictions from Northumberland County. Mutschler is currently serving a ten to twenty year prison sentence, followed by ten years of probation.

(Doc. 73-1, pp. 13-14; Doc. 73-3; Doc. 73-4; Doc. 73-5). In *Heck v. Humphrey*, the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. Furthermore, a criminal defendant "cannot demonstrate that the loss of his PCRA claim injured him unless he also demonstrates that his PCRA petition had merit, which necessarily would imply the invalidity of his [] conviction." *Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139, 142 (3d Cir. 2016) (citation omitted). Because Mutschler has not presented any evidence that his conviction and sentence has been invalidated, *Heck* bars any claim for damages in the instant action. *See Heck*, 512 U.S. at 486-87 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.").

Mutschler also claims that if his legal material was not confiscated, he would have been able to challenge his convictions and he would have been released from custody. (Doc. 26, § VI, ¶ 11). During his deposition, Mutschler claims that his "criminal case was impending [*sic*] at the time and [he] lost [his] criminal case because [he] didn't have the materials left." (Doc. 73-1, 36-38). During that time, Mutschler's second PCRA petition was on appeal to the Pennsylvania Superior Court. (Doc. 73-1, p. 38; Doc. 73-6). The Pennsylvania Superior Court ultimately denied Mutschler's second PCRA petition based on lack of jurisdiction, and found that the petition was untimely by thirteen years, and that no statutory exception to the time-bar was applicable. (Doc. 73-7). The Pennsylvania Superior Court stated that Mutschler "had until August 26, 2000, to file a timely petition and his April 9, 2013 petition is patently untimely." (*Id.* at p. 7). Mutschler fails to present any evidence to explain how his transcripts would have prevented his second PCRA petition from being deemed filed thirteen years late. Furthermore, on February 21, 2017, Mutschler filed a third PCRA petition. *See Commonwealth v. Mutschler*, 2017 WL 4772754, at *2 (Pa. Super. 2017). On March 3, 2017, the PCRA court dismissed the third petition as untimely, and Mutschler filed a timely notice of appeal. *Id.* On October 23, 2017, the Pennsylvania Superior Court found that the third PCRA petition was properly denied as untimely, and noted that Mutschler failed to raise any claim that his petition was timely under any of the exceptions to the one-year time bar. *Id.* Thus, the Court finds that Mutschler fails to

establish that he had a "nonfrivolous" or "arguable" underlying claim. *Christopher*, 536 U.S. at 415.

The Court finds that Mutschler has failed to establish an actual injury or legal loss. In failing to establish an actual injury or some legal loss, Mutschler has failed to demonstrate that he was unconstitutionally denied access to the courts. Therefore, Defendant is entitled to an entry of judgment in his favor on the access to the courts claim.

## V. Conclusion

Based on the foregoing, the Court will grant Defendant's motion for summary judgment.

A separate Order shall issue.

Dated: August 6, 2018

Robert D. Mariani
United States District Judge